# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANTHONY SCIRPO** | : | |
| **Plaintiff,** | : | **3:09cv1626(WWE)** |
| | : | |
| **v.** | : | |
| | : | |
| **GINA MCCARTHY, AMEY** | : | |
| **MARELLA, and TIMOTHY W.** | : | |
| **HILL,** | : | |
| **Defendants.** | : | |

### *MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

This case concerns plaintiff Anthony Scirpo's asserted right to defend himself and his property from black bears without arrest for violating state hunting laws.

Plaintiff filed this action against former Commissioner of the Department of Environmental Protection ("DEP") Gina McCarthy, Commissioner of the DEP Amey Marrella, and DEP Conservation ("EnCon") Police Officer Timothy Hill alleging that his arrest constituted a denial of his rights under the Due Process Clause (Count One) and Equal Protection Clause of the Fifth and Fourteenth Amendments and Article First, § 8 of the Connecticut Constitution (Count Two); plaintiff alleges further that the State of Connecticut's policy with respect to black bears constitutes a "taking" of his property in violation of the Takings Clauses of the United States and Connecticut Constitutions (Count Three and Four).

Defendants have filed a motion for summary judgment on the complaint in its entirety. For the following reasons, defendants' motion will be granted.

1

**BACKGROUND**

The parties have submitted statements of fact, depositions, documents, and affidavits that establish the following factual background.

Plaintiff Anthony Scirpo resides in Barkhamsted, Connecticut where he owns real property with his wife.

Defendants are former Commissioner of the DEP Gina McCarthy, Commissioner of the DEP Amey Marrella, and EnCon Police Officer Timothy Hill.

On April 17, 2007, at approximately 10:00 p.m., plaintiff responded to his dog barking and growling; looking through the screen of his backdoor while he remained inside a semi enclosed porch space, he saw a black bear in his backyard. The bear destroyed part of plaintiff's fence along with a bird feeder.

Plaintiff attempted to make the bear retreat by making loud noises, but he was unsuccessful. Plaintiff then shot the bear in the leg.

After shooting the bear, plaintiff called the DEP and reported that he had shot and wounded a bear that had broken through his fence and destroyed his bird feeder.

EnCon Police Officer Hill responded to plaintiff's telephone call at approximately 10:22 p.m. Plaintiff showed Officer Hill where the bear had damaged his fence and bird feeder. EnCon Officer Hill then observed the bear in a pine tree in plaintiff's backyard.

At approximately 11:45 p.m., EnCon Police Officers Tomassone and Sergeant ("Sgt.") O'Connell arrived on the scene. Plaintiff informed the officers that a bear had been seen in his backyard on several occasions and that it would destroy his bird feeders. EnCon Officers Hill and Tomassone both explained to plaintiff that he is enticing bears

onto his property by keeping his bird feeders out at that time of year and that he should remove them if he wanted to keep bears out of his yard.

Sgt. O'Connell decided to tranquilize the bear to assess the gunshot wound.  Paul Rego, a DEP Wildlife Biologist, and EnCon Officer Schneider arrived and tranquilized the bear.  The wound was inspected by Rego and was deemed not life threatening.  The bear was then removed from plaintiff's backyard and released on Metropolitan District Property.

EnCon Officer Tomassone seized two guns from the plaintiff for officer safety: a .38 caliber revolver and a Ruger model 10/22 rifle, which the plaintiff had used to shoot the bear.  Both guns were returned to plaintiff.

On April 22, 2007, EnCon Police Officer Kucia went to 6 Milner Lane in Barkhamsted, which is a residential property located directly behind plaintiff's house and adjacent to his backyard.  EnCon Officer Kucia measured the distance from plaintiff's back door on the enclosed porch to that property, which was approximately one hundred and sixty-two feet.  EnCon Officer Kucia then measured the distance to the plaintiff's neighbor across the street at 74 Goose Green Road, which was one hundred and sixty-eight feet.  The measurements were taking using a Bushnell Laser Yardage Pro Sport 450 Rangefinder.  Plaintiff denies the accuracy of these measurements.

On April 26, 2007, EnCon Officer Hill applied for an arrest warrant, charging plaintiff with Negligent Hunting in the fourth degree and Illegal Hunting/Shooting of a Black Bear.  The Arrest Warrant Application was signed by an Assistant State's Attorney and a Superior Court Judge on May 1, 2007.

On May 6, 2007, plaintiff was made aware of the arrest warrant and voluntarily surrendered at the DEP Pleasant Valley Headquarters.  He was then arrested and processed on the two criminal charges.  Plaintiff's Ruger 10/22 rifle was also logged into evidence.

On October 3, 2007, plaintiff applied to the Accelerated Rehabilitation Program. On November 2, 2007, plaintiff was accepted into the Accelerated Rehabilitation Program.  On May 23, 2008, plaintiff successfully completed the Accelerated Rehabilitation Program and his criminal charges were dismissed.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a

scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See* <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. *See* <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See* <u>Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).

### *Denial of Due Process Rights to Present a Defense (Count One)*

Defendants argue that plaintiff is barred from bringing a claim because he cannot maintain a § 1983 action due to his participation in the Accelerated Rehabilitation Program to avoid a conviction.

Plaintiff contends that his § 1983 claim should survive because his due process rights were denied in an egregious manner that would shock anyone's conscious due to the fact that EnCon Officer Hill found that the shooting of the bear was not justified. Plaintiff also claims that (1) he was forced to accept the Accelerated Rehabilitation Program because he would have been unable to assert a justification defense at trial since Connecticut does not recognize a defense of justification when a human shoots or kills an animal; (2) he was unable to contest the charges because the charges were dismissed since he participated in the Accelerated Rehabilitation Program; and (3) he has a Second Amendment right to bear arms.

The Court of Appeals for the Second Circuit has held that a criminal defendant cannot maintain a § 1983 action when he takes advantage of an accelerated rehabilitation program.  Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992).  The Court provided an exception to this rule if a party can show that he pled guilty because of an egregious denial of due process that shocks the conscious.  Id at 854.   Despite plaintiff's attempt to question whether Roesch remains good law, Roesch is still the controlling law.  Murphy v. Kearney, 2010 WL 2640041, *3 (D. Conn. 2010).

Plaintiff's claim of a denial of due process, because he was unable to present a justification defense at trial, fails due to his voluntary participation in the Accelerated Rehabilitation Program.  Although plaintiff attempts to show that he would have been convicted at trial and never able to assert a justification defense, the Second Circuit has held that speculation and conjecture are insufficient to overcome a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

Accordingly, the Court must consider whether plaintiff's claim falls within the exception articulated by Roesch.  Defendants are correct in arguing that the facts presented do not shock the conscious.  Plaintiff argues that EnCon Officer Hill should have made the determination that the shooting was justified.  However, defendants have shown through the undisputed facts that plaintiff observed a bear in his backyard, from inside of his semi enclosed porch space, approximately 20 feet away from his back door; the only time plaintiff opened his back door was when he shot the bear.  At no time was plaintiff in any immediate danger of being attacked by the black bear while he was observing it from the safety of his home.

### *Denial of Equal Protection of the Laws (Count Two)*

Count Two of plaintiff's complaint alleges that EnCon Officer Hill denied plaintiff's right to assert a justification defense under equal protection of the laws in violation of the Fourteenth Amendment.  Summary judgment will be entered on this count because plaintiff cannot bring a § 1983 action to challenge the outcome of his criminal proceeding due to the fact that he participated in the Accelerated Rehabilitation Program.  Roesch, 980 F.2d at 853.

### *Takings Clause (Counts Three and Four)*

Plaintiff claims that the DEP's regulation prohibiting the use of reasonable force against black bears deprives him of the use and enjoyment of his property contrary to the Takings Clause of the Fifth Amendment.

Defendants state that since bears are not property of the State of Connecticut, there has not been a "taking" of plaintiff's property.

The Fifth Amendment states that no private property shall be taken for public use without just compensation.  U.S. CONST. amend. V.  The Takings Clause of the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Palazzolo v. Rhode Island, 533 U.S. 606 (2001).  Government regulations in some instances may be compensable under the Takings Clause.  Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014-19 (1992).

A regulatory action that does not involve a permanent physical invasion of property or a complete deprivation of an owner's economically beneficial use of his property is analyzed under the "ad hoc" balancing approach.  Penn Cent. Transp. Co. v.

City of New York, 438 U.S. 104, 125-25 (1978).  The Court must consider (1) the economic impact of the regulation on the claimant and (2) the extent to which the regulation has interfered with distinct investment-backed expectations. *Id.*

Plaintiff's argument that Connecticut controls and regulates bears, thus they own them, is an assertion that is rejected by the Supreme Court.  The Court has held that the federal government and the states do not "own" the wild animals they protect, nor do they control the conduct of such animals.  Douglas v. Seacoast Products, Inc., 431 U.S. 265, 284 (1977).  By placing regulations on the hunting of bears, the State of Connecticut is not controlling the conduct of the bears.  The Court is clear that a State must have the power to preserve and regulate any exploitation of its resources.  *Id.*

The Tenth Circuit Court of Appeals has held that damage to private land by wild animals that are protected by federal statute does not constitute a "taking" by the government.  Mountain States Legal Foundation v. Hodel, 799 F.2d 1423 (10th Cir. 1986).  The court found that although there had been diminution in the value of the defendant's property because of grazing by the wild horses, a reduction in property value does not always constitute a "taking" when the value lost is minimal. *Id* at 1431.  The Ninth Circuit Court of Appeals has similarly held that federal grizzly bear regulations do not effect a "taking" of an owner's property without just compensation in violation of the Fifth Amendment because the government did not own or control the conduct of the animals. Christy v. Hodel, 857 F.2d 1324, 1335 (9th Cir. 1988).  It reasoned that there was nothing forcing the plaintiff to bear the burden of the regulation.  *Id.*

In the present case, economic impact upon plaintiff from the regulation is slight and he has failed to show how the regulation has interfered with distinct investment-

backed expectations.  Furthermore, defendants' argument that plaintiff is creating this situation for himself is well founded.  Both parties agree that plaintiff was warned about enticing bears with the bird feeders located on his property.  The State of Connecticut has taken no actions that have transformed the plaintiff's property to limit his use of his property or diminish the property value or forced him to bear the burden of the regulation. Plaintiff has not suffered any significant loss of value and is limiting the full use of his property himself by continuing to keep bird feeders on his property.

### *Qualified Immunity*

Plaintiff claims that defendants acted outside the scope allowed for protection under qualified immunity.

Defendants argue that, even if disputed factual issues remain on plaintiff's above stated claims, summary judgment is proper in their favor because the doctrine of qualified immunity shields them from liability.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir.1998).

Police activity conducted pursuant to a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. United States

v. Leon, 468 U.S. 897, 922 (1984). The Court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization. *Id.*

In the present case, EnCon Officer Hill applied for an arrest warrant for the plaintiff on the two previously discussed charges based on the evidence from EnCon Officer Kucia's measurements and his own assessment of the incident.  He then had the warrant signed by a Superior Court Judge and an Assistant State's Attorney.  It is clear that the defendants' actions did not violate established law and it was objectively reasonable for the defendants to believe their actions did not violate any law.  Plaintiff has shown no facts that would indicate EnCon Officer Hill acted unreasonably in determining that the shooting of the bear was not justified.  Additionally, this Court has found no violation of plaintiff's Constitutional rights in the above stated claims.

### State Law Claims

In Counts One, Three, and Four, plaintiff includes allegations of violations of the Connecticut Constitution.  A district court may decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed.  28 U.S.C. § 1367(c)(3).  Where no federal claims remain in a lawsuit, the district court may decline to exercise supplemental jurisdiction and leave the state law claims to be considered by the state courts.  Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).  When all federal claims are dismissed before a trial, the state claims should be dismissed as well.  Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004).

The Court has granted summary judgment in favor of the defendants on the federal claims.  The remaining state constitutional claims are more appropriate to be

determined by the state court.  Hernandez v. Carbone, 567 F.Supp.2d 320, 333 (D.Conn. 2008).  Therefore, in the interests of judicial economy, convenience, fairness, and comity this Court declines to exercise supplemental jurisdiction over the claims of state constitution violation.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  The court declines to exercise supplemental jurisdiction over any state law claims. Accordingly, such claims are dismissed without prejudice.  The Clerk is instructed to close this case.


Dated this __11th__ day of July 2013 at Bridgeport, Connecticut.


/s/
_____
Warren W. Eginton
Senior United States District Judge